NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**GREE, INC.,**
*Appellant*

**v.**

**SUPERCELL OY,**
*Appellee*

_____

2020-2125

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2019-00018.

_____

Decided: May 10, 2021

_____

SCOTT ANTHONY MCKEOWN, Ropes & Gray LLP, Washington, DC, for appellant. Also represented by DOUGLAS HALLWARD-DRIEMEIER, MATTHEW RIZZOLO, KATHRYN C. THORNTON.

MICHAEL JOHN SACKSTEDER, Fenwick & West LLP, San Francisco, CA, for appellee. Also represented by TODD RICHARD GREGORIAN; JENNIFER RENE BUSH, Mountain View, CA; GEOFFREY ROBERT MILLER, New York, NY.

_____

Before TARANTO, LINN, and CHEN, *Circuit Judges.*

PER CURIAM.

GREE, Inc. ("GREE") appeals the holding of the Patent Trial and Appeal Board ("Board") in a post-grant review initiated by Supercell Oy ("Supercell") that claims 1–20 of GREE's U.S. Patent Number 9,897,799 ("'799 patent") are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

The Board, applying *Alice* Step 1, *see Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), held that the claims were directed to "the abstract idea of associating game objects and moving one or more of the objects." *Supercell Oy v. GREE, Inc.*, 2020 WL 2858715, at *9 (P.T.A.B. June 2, 2020) ("*Board Op.*"). Under *Alice* Step 2, the Board held that neither the independent nor the dependent claims included an inventive step and recited merely routine and conventional steps that did not capture the particular improvements disclosed in the specifications. *Id.* at *11, *13–15. The Board thus held that all instituted claims were patent ineligible. *Id.* at *15. We review the Board's determination of patent ineligibility absent factual disputes *de novo*. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). We see no error in the Board's holding and thus affirm.

## I.     Independent Claims

Turning first to independent claims 1, 8, and 15, GREE primarily argues that the claims are directed to a novel gesture-driven control interface for computer gaming, and that this is akin to patent-eligible improvements in computer technology in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362–63 (Fed. Cir. 2018) and *Data Engine Technologies LLC. v. Google, LLC,* 906 F.3d 999, 1008 (Fed. Cir. 2018).

We agree with the Board and Supercell that the claims are directed to "the abstract idea of associating game objects and moving one or more of the objects" rather than to an improvement in a graphic user interface. Claim 1 calls for "[a] computer-implemented method for operating a computer game," comprising basic computer functionality (storing and displaying data), "accepting, via an input face configured to detect a touch operation, operation information regarding a touch operation," "determining, using a processor, whether the operation information comprises a direction operation," moving "one or more of the plurality of associated objects as a group in the direction indicated by the direction operation," and "displaying, on a computer screen, the new arrangement on the game field." Claims 8 and 15 are substantively identical, with the addition of a "graphical user interface" in the preamble to claim 15.

The independent claims are not directed to an improvement in the interface. As the Board correctly held, the method of detecting a touch operation via the "input face" is merely "incidental to the claimed method" needed only "to manipulate these objects in accordance with the input provided by a user." *Board Op.* at \*7; *see also id.* at \*8 (noting that the reference to an "input face" in claim 8 and the "graphical user interface" in the preamble in claim 15 do not focus claims 8 and 15 on the interface for the same reasons as claim 1). The touch interface claimed is merely the mechanism by which the focus of the invention—the movement-based rules comprised of the remaining steps in the claims—is executed. This is made clear by the patent's wholly generic claiming and description of the touch interface, and the claiming of wholly generic touch-screen functionality. Although the claims recite an "input face configured to detect a touch operation," this is the total extent of detail of the nature of the interface. The inclusion of such "generalized steps to be performed on a computer using conventional computer activity" does not render the

claims directed to improvements in computer technology. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016); *see also In re TLI Commc'ns LLC Pat. Lit.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (holding that claims directed to a method for recording digital images on a telephone were not directed to an improvement to computer functionality because "they are directed to the use of conventional or generic technology in a nascent but well-known environment" without "describ[ing] a new telephone, a new server, or a new physical combination of the two" or "any technical details for the tangible components").

The claims here are wholly unlike the claims we held were directed to patent eligible subject matter in *Core Wireless*. There, the claims called for the display of an application summary window "that can be reached directly from the menu" that displays application summaries while the application is in "an un-launched state." *Core Wireless*, 880 F.3d at 1359. We explained that the claims specified "a particular manner by which the summary window must be accessed," included specific data to be included in the summary and required that the applications exist in a particular state. *Id.* at 1362. We concluded that these limitations, taken together, "disclose a specific manner of displaying a limited set of information" as contrasted with conventional user interface methods. *Id.* at 1363. Here, by contrast, the user interface is described without specificity at a generic level. The Board correctly explained that the "claimed 'input face' is simply not claimed in sufficient detail to require the type of specific user interface found to transform the claims into a practical application in *Core Wireless*, *DDR Holdings*, and other similar cases." *Board Op.* at *11. We also agree with the Board that the addition of "a graphical user interface" in the preamble to claim 15 adds nothing to the generic claiming of the input face.

The claims are also unlike those directed to "a specific method for navigating through three-dimensional electronic spreadsheets," which we held to be patent eligible in *Data Engine*. *See* 906 F.3d at 1008. There, the interface "solved [a] known technological problem in computers in a particular way," and representative claim 12 "recite[d] specific steps detailing the method of navigating through spreadsheet pages within a three-dimensional spreadsheet." *Id.* The independent claims here stand in stark contrast because they recite only generic functionality of a touch-screen—recognizing a touch and a movement operation—and thus recite merely the abstract idea of associating and moving an object on a screen.

Turning to *Alice* step 2, we agree with the Board that nothing in the claims constitute an inventive step. As the Board correctly held, each of the limitations separately and in their ordered combination were routine and conventional. GREE argues that the input face has the capacity to distinguish between different types of operations; to wit, the "syntax of touches, swipes, and their combination to particular semantics, or the meaning of such operations." *Appellant's Br.* at 54. We see no error in the Board's conclusion that swipe operations were conventional, as disclosed in the specification's discussion of the prior art. '799 patent, col. 1, ll. 8–28. The Board also correctly explained that none of the syntax of touches and swipes that GREE cites as its inventive step are captured in any of the elements of the claims. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Moreover, the claims do not recite the ability to move multiple objects simultaneously; rather, the claims call for moving "**one or more** of the plurality of associated objects as a group" (emphasis added). With respect to the ordered combination of elements, we also agree with the Board that the associating, determining, and moving limitations are merely the

itemization of the abstract idea of associating game objects and moving one or more of the objects.

We thus affirm the Board's conclusion that independent claims 1, 8, and 15 are directed to patent-ineligible subject matter.

## II.    Dependent Claims

GREE summarily argues that claims 2, 9, and 16 add the limitation "specifying operation," by which a selected object from the plurality of associated objects is not moved. We see no error in the Board's holding these claims recite only patent-ineligible subject matter. As is the case with the independent claims, neither the dependent claims themselves nor the specification explains how the specifying operation works except in generic terms.

GREE argues that claims 3–6, 10–13, and 17–19, which include "a region into which an object is incapable of progressing," provides a separate inventive step. Again, the particulars of the processing of this limitation are recited in the claims and described in the specification wholly generically. It thus cannot form the basis of the inventive step. The same is true of claims 7, 14, and 20, which include a limitation that the objects may change "direction."

**AFFIRMED**