NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A., UNILOC 2017 LLC,**
*Plaintiffs-Appellants*

**v.**

**ADP, LLC,**
*Defendant*

**BIG FISH GAMES, INC.,**
*Defendants-Appellees*

---

2018-1132, 2018-1346

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-00741-RWS, 2:16-cv-00858-RWS, Judge Robert Schroeder, III.

-----------------------------------------------------

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A., UNILOC 2017 LLC,**
*Plaintiffs-Appellants*

**v.**

**BITDEFENDER, INC., KASPERSKY LAB, INC.,**
*Defendants-Appellees*

————————————————

2018-1448

————————————————

Appeal from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-00393-RWS, 2:16-cv-00394-RWS, 2:16-cv-00871-RWS, Judge Robert Schroeder, III.

————————————————

Decided: May 24, 2019

————————————————

JAMES J. FOSTER, Prince Lobel Tye LLP, Boston, MA, argued for plaintiffs-appellants. Also represented by PAUL J. HAYES, AARON JACOBS.

DOUGLAS FRED STEWART, Bracewell LLP, Seattle, WA, argued for defendant-appellee Big Fish Games, Inc. Also represented by DAVID JOHN BALL, New York, NY.

MENG XI, Susman Godfrey LLP, Los Angeles, CA, argued for defendant-appellee Bitdefender, Inc. Also represented by OLEG ELKHUNOVICH, KALPANA SRINIVASAN; SHAWN DANIEL BLACKBURN, Houston, TX.

CASEY ALLEN KNISER, Patterson Thuente Pedersen, PA, Minneapolis, MN, for defendant-appellee Kaspersky Lab, Inc. Also represented by ERIC H. CHADWICK.

————————————————

Before PROST, *Chief Judge,* LINN and MOORE, *Circuit Judges.*

LINN, *Circuit Judge.*

Uniloc USA, Inc. and Uniloc Luxembourg S.A. appeal the dismissal by the District Court for the Eastern District

of Texas of their complaints of infringement of U.S. Patents No. 7,069,293 ("'293 patent"), No. 6,324,578 ("'578 patent"), No. 6,510,466 ("'466 patent") and No. 6,728,766 ("'766 patent") in related cases against Appellees ADP, LLC; Kaspersky Lab, Inc.; Big Fish Games, Inc.; and Bitdefender, Inc. *See Uniloc USA, Inc. v. AVG Techs. USA, Inc.* ("*AVG Decision*"), No. 2:16-cv-00393 (E.D. Tex. Mar. 28, 2017) (dismissing, inter alia, claims against AVG, Kaspersky, and BitDefender); *Uniloc USA, Inc. v. ADP, LLC* ("*ADP Decision*"), No. 2:16-cv-00741 (E.D. Tex. Sep. 28, 2017) (dismissing claims against ADP and Big Fish). Appellants also appeal the district court's denial of Uniloc and ADP's joint motion to vacate the ADP decision with respect to ADP only. *Uniloc USA, Inc. v. ADP, LLC* ("*Vacatur Order*"), No. 2:16-cv-741 (E.D. Tex. Nov. 20, 2017).

We reverse and remand the district court's dismissal based on patent ineligibility of the invention claimed in the '293 and '578 patents, and affirm the district court's dismissal with respect to the '466 and '766 patents. We reverse and remand the district court's order denying vacatur. Because we write for the parties, we rely on the district court's exposition of the facts of the case.

## I. Standing and Jurisdiction

### A. Uniloc 2017 Assignment

Uniloc USA and Uniloc Luxembourg filed notices of appeal in *Uniloc USA, Inc. v. Big Fish Games, Inc.* on October 27, 2017, and in *Uniloc USA, Inc. v. Bitdefender LLC and Uniloc USA, Inc. v. Kaspersky Lab, Inc.* on January 17, 2018. On May 3, 2018, Uniloc USA and Uniloc Luxembourg transferred all their rights in and to the patents-in-suit to Uniloc 2017. During oral argument on March 7, 2019, and via letter on March 11, 2019, Uniloc USA and Uniloc Luxembourg moved to substitute Uniloc 2017 as the party in interest, or, in the alternative, to join Uniloc 2017. Appellees opposed.

When Uniloc USA and Uniloc Luxembourg filed the notices of appeal that set our jurisdiction in these cases, they were indisputably the owners of the patents-in-suit. The transfer of the patent rights to Uniloc 2017 did not divest this court of jurisdiction or the ability to substitute or join a successor-in-interest. *See, e.g., Minn. Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1262 (Fed. Cir. 1985) (quoting *Jones v. Village of Proctorville, Ohio*, 303 F.2d 311, 313 (6th Cir. 1962)) (substitution of a corporate successor-in-interest "did not defeat the Court's jurisdiction once that jurisdiction has been invoked properly by" the original party); *TOC Retail, Inc. v. Gulf Coast Oil Co. of Miss., Inc.*, No. 97-30969, 1999 WL 197149, at *12 (5th Cir. Mar. 25, 1999) (unpublished) (explaining that Fed. R. App. P. Rule 43(b) is based on Fed. R. Civ. P. 25, and "permits" the court to order substitution of parties "when there has been a transfer of interest"); *Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, No. 2018-1221, slip op at *2 (Fed. Cir. Sep. 19, 2018) (citing *Beghin-Say Int'l v. Rasmussen*, 733 F.2d 1568, 1569 (Fed. Cir. 1984)) ("[T]his court has previously granted motions to substitute under Rule 43(b) when a party has acquired the patents during an appeal."). *See also* Fed. R. App. P. 43(a) Advisory Committee Notes (citing Fed. R. Civ. P. 25(a)) ("The first three sentences describe a procedure similar to the rule on substitution in civil actions in the district court"); 6 Moore's Federal Practice Civil § 25.30 (noting that Rule 25 is intended "to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit"); 7A Wright & Miller, Fed. Practice & Proc. § 1958 (noting that under Fed. R. Civ. P. 25, "[t]he court, if it sees fit, may allow the transferee [of an interest] to be substituted for the transferor" where an interest is transferred during the pendency of an action); *Minn. Min. & Mfg.*, 757 F.2d at 1263 (quoting *In re Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981)) ("Rule 25(c) is not designed to create new relationships among parties to a suit but is

designed to allow the [original] action to continue unabated when an interest in the lawsuit changes hands.").

Although there is no Rule in the Federal Rules of Appellate Procedure allowing joinder, the Supreme Court, the Fifth Circuit, and this court have allowed appellate joinder under Federal Rule of Civil Procedure 21 governing misjoinder and nonjoinder. *Mullaney v. Anderson*, 342 U.S. 415, 417 (1952) (allowing joinder where it "merely puts the principal, the real party in interest, in the position of his avowed agent," "it can in no wise embarrass the defendant," and where earlier joinder would not have "in any way affected the course of the litigation"); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989) (discussing *Mullaney* and the appellate courts' joinder powers); *Banks Next friend of W.B. v. St. James Parish School Bd.*, No. 16-31052, 2018 WL 6584305, at *4 (5th Cir. Dec. 12, 2018) (recognizing that a "court can sua sponte determine that a required party is missing, and it can add that party to the case" under Fed. R. Civ. P. 21); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed. Cir. 2001) (noting that appellate joinder may be available where it "would not prejudice the defendants").

Appellees argue that they would be prejudiced by Appellants' approximately ten-month delay in filing the motion to join or substitute, and in failing to attach the full Asset Purchase Agreement among the Uniloc entities.

We conclude that joinder of Uniloc 2017 is in order. We find no merit in Appellees' assertion that the transfer of rights to Uniloc 2017, the delay in informing the court, or the failure to attach the Asset Purchase Agreement prejudices Appellees or provides any "tactical advantage" to Uniloc. Joining Uniloc 2017 does not affect Appellees' potential claims against Uniloc USA and Uniloc Luxembourg. An earlier motion filed immediately after the transfer (and after the notice of appeal) would not have changed the course of the litigation. Uniloc 2017 has not requested

additional time to file separate merits briefs or to take any additional measures to accommodate Uniloc 2017 as a separate party.[1]  Judicial efficiency—both with respect to this case and the several other disputes pending at the Court involving the Uniloc entities and at least some of the Appellees—strongly supports joinder here.  *See Mullaney*, 342 U.S. at 417 (in the circumstances of that case, noting that failure to join a party on appeal would "require the new plaintiffs to start over in the District Court [and] would entail needless waste and runs counter to effective judicial administration").  Moreover, joining Uniloc 2017 retains Uniloc USA and Uniloc Luxembourg as parties in this case and addresses Appellees' concern that Uniloc 2017 may not have accepted Uniloc USA and Uniloc Luxembourg's liabilities along with the transfer of rights in the Asset Purchase Agreement.

Uniloc's motion to join Uniloc 2017 is granted and the caption is amended accordingly.[2]

B.  Uniloc USA, Inc. and Uniloc Luxembourg S.A.'s
Alleged Breach of the IBM Agreement

By motion dated February 19, 2019, Appellees Bitdefender, Big Fish Games, Inc. and Kaspersky Lab, Inc. (collectively, "Movants") argue that Uniloc lost standing with respect to Movants when Uniloc failed to indemnify ADP after IBM licensed ADP on October 20, 2017.

According to Movants, Uniloc's failure to indemnify ADP automatically triggered Section 2.1(e) in the 2016 Uniloc-IBM Agreement, which gave IBM the right to

---

[1]    Counsel for Uniloc USA and Uniloc Luxembourg stated at oral argument that he also represents Uniloc 2017.

[2]    Hereinafter, we use "Uniloc" to refer to the Uniloc entity with the rights in the patent at the time being discussed.

"license . . . without notice or accounting" to "third parties involved in any activities related to or arising from defense, enforcement or licensing under any Assigned Patent." Movants contend that Uniloc thus could no longer wholly exclude Appellees from practicing the patents, and that Uniloc thus lacked constitutional standing under *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010). Relying on *Moore v. Consolidated Edison Co. of NY*, 409 F.3d 506, 509 (2d Cir. 2005), Movants argue that because constitutional standing was lost, we must dismiss the appeal.

Movants' argument is predicated on the existence of a breach of the 2016 Uniloc-IBM Agreement. But Movants have not shown that IBM, which is not a party to this litigation, considers Uniloc to be in breach or has asserted a right to sublicense and release Movants from liability relating to the patents-at-issue. Only ADP and Movants here have asserted a breach of the 2016 Uniloc-IBM Agreement. But neither ADP nor Movants are parties to the Agreement.

Movants cite no other basis from which to assert a breach of the indemnification provision on behalf of IBM so as to activate the reversionary interest on which they base their jurisdictional argument. For example, they do not assert that they are intended beneficiaries of the contract. *See* Restatement (2d) of Contracts § 302 (defining intended and incidental beneficiaries) and Comment e ("[U]nless the third person is an intended beneficiary as here defined, no duty to him is created."); U.C.C. § 3-301 (defining "[p]erson entitled to enforce' an instrument" as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) [in circumstances of a lost, destroyed or stolen instrument, or where the instrument was accepted by mistake]"). The breach of a contract potentially involves disputes of materiality, potential opportunities to cure, and available remedies, all of which are consummate contract issues to be resolved

between the parties. *See, e.g.,* Restatement (2d) of Contract §§ 225 (effects of the non-occurrence of a condition); 229 (excuse of a condition to avoid forfeiture); 241 (circumstances significant in determining whether a failure is material); 242 (circumstances significant in determining when remaining duties are discharged); 246 (effect of acceptance as excusing the non-occurrence of a condition). Movants have not pointed to any case where a non-beneficiary third party has asserted a breach of a contract that successfully triggered remedial provisions in the contract.

For the foregoing reasons, Movants motion to dismiss based on a loss of standing is denied.

## C. Vacatur of the *ADP Decision*

Uniloc argues that the district court abused its discretion when it denied Uniloc's motion to vacate the ADP judgment. Uniloc argues that unless the ADP judgment is vacated, third parties may argue that it creates issue preclusion. Uniloc contends this is unfair because it was denied the right to appeal the ADP judgment by the mooting of the Uniloc-ADP dispute. Appellees do not dispute that there is no longer a live dispute between Uniloc and ADP, but argue that mootness occurred due to Uniloc's actions, making vacatur inappropriate.

Vacatur due to mootness is an equitable remedy. "The principal condition to which we have looked [in deciding whether vacatur is appropriate] is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994). *See also United States v. Munsingwear*, 340 U.S. 36, 39–40 (1950) (noting the "established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss" when "review [of a judgment] was prevented through happenstance"). Where "mootness

occurred prior to the rendering of final judgment. . . vacatur and dismissal is automatic," because mootness ordinarily undermines jurisdiction, and, under Fifth Circuit law, "we cannot leave undisturbed a decision that lacked jurisdiction." *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999).

We need not decide *when* the mootness here occurred. If it occurred, as Uniloc contends, on September 27, 2018, when Uniloc agreed to amend the Agreement with IBM to give IBM the right to license ADP, then the case was rendered moot prior to the district court's decision (and judgment). If, on the other hand, the case was rendered moot when IBM licensed ADP on October 20, 2018 or later, then IBM and ADP—not Uniloc, the party seeking relief from the judgement—were the actors responsible for the mootness. In either event, review by Uniloc of the judgment against it was "prevented through happenstance." *U.S. Bancorp*, 513 U.S. at 23 (quoting *Munsingwear*, 340 U.S. at 40 and *Karcher v. May*, 484 U.S. 72, 82 (1987)). Under the particular circumstances of this case, vacatur was in order and should have been granted as to ADP.

We therefore reverse the district court's Order denying Uniloc's and ADP's joint motion to vacate the *ADP Decision* and remand with instructions to vacate the *ADP Decision* as to ADP only.

## II. Patent Eligibility

We next turn to the substantive issue of patent eligibility with respect to each of the patents-in-suit.

"Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). We analyze eligibility under the two-step *Alice* framework. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). In step one, we must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Under

this inquiry, we evaluate "the focus of the claimed advance over the prior art" to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

In step two, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. at 218 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Step two "looks more precisely at what the claim elements add" to determine if "they identify an inventive concept in the application of the ineligible matter to which . . . the claim is directed." *SAP*, 898 F.3d at 1167 (internal quotation marks omitted). The abstract idea itself cannot supply the inventive concept, "no matter how groundbreaking the advance." *Id.* at 1171.

## A. '293 Patent

Uniloc argues that the '293 patent claims are directed to an "improvement over then-existing methods for centralized distribution of software" by allowing applications to be installed on client computers "from a single point for an entire managed network environment." '293 patent, col. 3, ll. 34–39. Uniloc argues that the '293 patent claims are directed to a particular way to achieve this advance by "preparing a file packet associated with the application program and including a segment configured to initiate registration operations for the application program at the target on-demand server; and distributing the file packet to the target on-demand server to make the application program available for use by a user at a client." *Id.* at col. 21, ll. 31–37 (Claim 1).

Appellees argue that the claims are directed to the abstract idea of centralized distribution of software. According to Appellees, the file packet is not a specific way to accomplish the result because the specification shows that file packets performed an "inherent function[]" in existing off-the-shelf software products. Appellees' Br. at 36 (citing '293 patent, col. 17, ll. 38). Appellees argue that the '293 patent *claims* are not directed to an improvement in network functionality, but rather merely provide centralized distribution of software by using conventional computer components as tools.

We agree with Uniloc that the claims of the '293 patent are directed to the use of file packets with segments configured to initiate centralized registration of an application from an application server, and that this is not an abstract idea. It is true, as Appellees argue, that the goal of the claims is functional: to allow centralized distribution of software. *See, e.g.*, '293 patent, Abstract ("[S]oftware distribution and installation may be provided from a single network management server."); *id.* at col. 3, ll. 43–46 ("[I]t is an object of the present invention to provide methods, systems and computer program products for centralized management of application programs on a computer network."). But the patent claims a particular improvement in *how* this is done—i.e. by use of a file packet to enable the further functionality of initiating on-demand registration of the application. This is the clear "focus" of the claims and the asserted advance described in the specification. *See id.* at col. 4, ll. 14–26; col. 5, ll. 33–58; col. 17, l. 55 – col. 20, l. 64.

There is nothing in the record to suggest that such network architecture was so conventional as to exclude that architectural limitation in framing what the claims are "directed to." The district court erred in discounting this key focus of the claims in part because of a misreading of the specification's description of the management approach provided by Tivoli Systems, Inc. and referred to as the

Tivoli Management Environment ("TME"). The district court reasoned that the invention claimed in the '293 patent is not directed to an improvement in the computer or network functionality because it uses "off-the shelf components," "includes only generic activities of servers," and "does not amount to more than a routine activity of commercial network management software as described by the specification itself." *ADP Decision* at 14 (citing, inter alia, '293 patent, col. 17, ll. 20–54). The cited description in the specification, however, merely describes *the implementation of the claimed invention using* the TME. It does not indicate that the *TME itself previously* used the claimed file packets, nor does it support the Board's conclusion that the use of file packets was conventional. *See* '293 patent, col. 17, ll. 27–31 ("[T]he invention will be described with respect to its application and implementation using a specific network management approach provided by Tivoli Systems Inc. referred to as the Tivoli Management Environment."). The district court failed to appreciate that the specification was describing the enhanced functionality provided to the prior art TME system by the use of the claimed file packets. It is undisputed that the addition of the file packet limitation during prosecution was the heart of the patent's allowance.[3] *See* J. App'x at 751 (examiner's reasons for allowance). As noted, *supra*, the relevant question for purposes of step one is what is "the focus of the

---

[3]    Uniloc argues that Appellants have waived their right to rely on the prosecution history by not raising it below. We disagree. There is no dispute that Uniloc maintained in the district court that the file packet was a focus of its invention. The prosecution history is part of the intrinsic record of the patent and is a "matter[] of public record." *Data Engine Techs. LLC. V. Google LLC*, 906 F.3d 999, 1008 n. 2 (Fed. Cir. 2018). It is thus subject to judicial notice and may be considered in our de novo review of the district court's eligibility analysis. *Id.*

claimed advance over the prior art." *Intellectual Ventures I*, 850 F.3d at 1338. Here, that focus is on the use of the file packet configured to initiate registration of an application from an application server. This is not an abstract idea, but a particular improvement in the functioning of prior art application distribution networks. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) ("Here, the claims recite more than a mere result. Instead, they recite specific steps—generating a security profile that identifies suspicious code and linking it to a downloadable—that accomplish the desired result."); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.").

Because the claims in the '293 patent are not directed to an abstract idea, we need not proceed to *Alice* step two. We reverse the district court's dismissal with respect to the '293 patent claims and remand for further proceedings consistent with this opinion.

## B. '578 Patent

Claim 1[4] of the '578 patent recites a network providing for the acquisition of *both* a "user set of the plurality of

---

[4]    The district court considered Claim 1 of the '578 patent as representative. Without explanation, Uniloc on appeal focuses on Claim 6. Because Uniloc has not shown that it objected to the district court's consideration of Claim 1 as representative of the claims of the '578 patent, and does not explain why we should focus instead on Claim 6, we continue to analyze all the asserted claims in the '578 patent based on Claim 1.

configurable preferences" *and* an "administrator set of the plurality of configurable preferences." The claim requires distribution of an application launcher program to the user, and the specification explains that the administrator preferences are stored on the server. '578 patent, col. 3, ll.55–61. This positioning of the components allows the application to launch in "respons[e] to a request from one of the plurality of authorized users" pursuant to *both* sets of preferences. In other words, it allows for on-demand installation of two-tier customized applications.

We agree with Uniloc that this is not just a functional claim using conventional technological components. Instead, the claim is directed to a particular way of using a conventional application server to nevertheless allow on-demand installation of an application incorporating preferences from two different sources by adding the application manager *and* configuration manager as additions to each application. This is not an abstract idea under *Alice* step one. *See Enfish*, 822 F.3d at 1337–38 (holding patent eligible claims directed to "a specific improvement to computer functionality" that "functions differently than conventional database structures" and "achieves other benefits over conventional databases"). The two specific added components do not merely fulfill their ordinary roles—their use together on an application server represents a different way of achieving the improvement claimed in the '578 patent.

Moreover, even if the claim was abstract under step one, it would still be eligible under step two. The positioning of these components on the application server is akin to the inventive concept in *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The inventive concept described and claimed in the [patent-at-issue] is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user. This design gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP

server."). The positioning of these components on the application server together with the application launcher on the client computer allows customization by both the administrator and the user in such a way as the installation can proceed on-demand with both sets of preferences. There has been no showing or determination that such a network architecture was conventional.

Appellees argue that Uniloc has waived the argument that the steps and ordered combination of steps of the '578 patent were not conventional by not raising it to the district court. We disagree. In Uniloc's opposition to Big Fish's motion to dismiss, Uniloc argued that the claims of the '578 patent were patent eligible because, *inter alia*, the configurable preferences and the combination of connections and hardware and applications were unconventional. Plaintiffs' Opposition to Defendant Big Fish Games, Inc.'s Motion to Dismiss for Failure to State a Claim, *Uniloc USA, Inc. v. ADP*, No. 2:16-cv-00741 (E.D. Tex. Dec. 1, 2016), ECF No. 97 at *8–10.

We thus conclude that the district court erred in holding that Claim 1 of the '578 patent is patent ineligible. We reverse the district court's grant of Appellees' motion to dismiss with respect to the '578 patent and remand for further proceedings consistent with this opinion.

## C. '466 Patent

In considering step one, the district court began its analysis by characterizing what the claims of the '466 patent were directed to by merely repeating the language of the claims themselves. *See AVG Decision*, at 11. The district court more appropriately went on, however, to consider the "focus of the claimed advance over the prior art" and "the character of the claim as a whole" in concluding that the representative claim did not claim a particular way of programming or designing the software, and did not use computers in any non-conventional way. We agree with this conclusion and hold that the claims of the '466

patent are directed to using a desktop interface to access an application server. This is an abstract idea.

Uniloc argues that the invention claimed in the '466 patent improves upon the prior art by allowing for "seamless integration of application access and session characteristics across heterogenous network." '466 patent, col. 3, ll. 21-25. Uniloc argues that it does this through a user desktop interface that includes "display regions associated with application programs for which the user is authorized."

The "display regions" of the claimed desktop interface are simply icons that execute programs. Appellees alleged that the components are all conventional. Uniloc does not argue that the display icons or the user desktop incorporate any unconventional software or perform any unconventional functionality, *see* Appellant's Opening Br. at 33; *id.* at 4 ("A known approach to reducing software distribution problems was to use an application server to store and maintain applications that may then be transmitted over a network to clients using a software program."), nor does Uniloc contend that using an icon to access an application is in any way unconventional. Moreover, the mere *fact* of using a desktop interface to access a conventional application server using conventional software is not an improvement in "network architecture" as Uniloc contends. The user desktop interface with display regions does not impart any materially different functionality to the network itself over a conventional application server.

The claim is wholly functional and does not include the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *See SAP*, 898 F.3d at 1167. Moreover, the user-specificity of the available applications is merely an elementary form of customization, which we have previously held does not itself render claims non-abstract. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369–70

(Fed. Cir. 2015) (holding that tailoring a website display to a user's personal characteristics is abstract). The focus of the claims here is on the abstract idea of using a desktop interface to access an application server. The alleged functional improvements in efficiency arise wholly out of the conventional advantages of using networked computers as tools, not a particular improvement in the computer or network. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (distinguishing patent eligible improvements in computer functionality from patent ineligible improvements that use computers as tools).

The claims of the '466 patent also do not pass muster under step two. Uniloc merely argues that the ordered combination in the claims, "namely, the various software limitations and their interaction," Appellant's Opening Br. at 36, is an inventive concept. However, the "software limitations" are merely the conventional ones described above. There is nothing unconventional about the "ordered combination" that is not merely the sum of the parts. *See In re TLI Commc'ns Patent Lit. v. AV Automotive, LLC*, 823 F.3d 607, 615 (Fed. Cir. 2016) (holding that where "recited physical components behave exactly as expected according to their ordinary use," they do not constitute an inventive concept).

Uniloc argues that whether the components were conventional under step is a question of fact, and that the district court erred by deciding these fact issues against Uniloc as the non-moving party. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364–65 (Fed. Cir. 2018). In particular, Uniloc argues that there is "zero evidence" of a *user-specific* desktop interface, where the server interface includes display regions *for which the user is authorized*, and where the server receives a selection from the interface and provides an instance of the application to the client for execution. We disagree. The district court adequately supported its conclusion by reference to the specification's description of a prior art client-server environment. *AVG*

*Decision* at 15 (citing '446 patent, col. 1, l. 57 – col. 2, l. 11). That section of the specification describes the prior art client-application server architecture, which necessarily includes a user interface, and allows the transmission of an application program from a server to a client for installation. Although that section explains that the prior art had certain limitations, like limiting the install to a particular client, the overcoming of those limitations is nowhere in the claim.

Uniloc also briefly argues that the prosecution history supports a lack of conventionality because the examiner did not find any references that taught the display region. Uniloc does not point to anything in particular in the prosecution history. The mere allowance of claims during prosecution does not preclude dismissal for patent ineligibility. Moreover, Uniloc is incorrect that an improvement in efficiency guarantees patent eligibility. The cases Uniloc cites are inapposite because the efficiency improvements in those cases arose out of claimed unique improvements in computer functionality, rather than improvements inherent in the use of conventional computer components as tools to perform conventional functions. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (holding patent eligible claims that created an efficiency improvement through a new user interface); *Berkheimer*, 881 F.3d at 1369 (holding that claims that fail to capture a purportedly unconventional form of data storage ineligible, while finding that other claims that do capture purportedly unconventional forms of data storage gave rise to a factual dispute underlying patent eligibility); *Enfish*, 822 F.3d at 1339 (noting that improvements in efficiency arising out of an invention that "functions differently than conventional" structures "bolster[s]" the conclusion that the claims are directed to technological improvements rather than abstract ideas).

We thus affirm the district court's conclusion that representative claim 1 of the '466 patent is not patent eligible.

## D.  '766 Patent

Uniloc argues that the '766 patent claims a network architecture that enables user-specific license management over a network, and that this functionality contrasts with prior art licensing on a client/workstation basis.  Uniloc argues that this is a particular improvement in computer functionality—changing the network architecture by maintaining license management policy information at a license management server so that users can move from client to client and maintain their permissions.

Representative Claim 1 is directed to a license management method that indicates a user's authorization to access an application.  The task in claim 1 is simply to "provid[e] an unavailability indication . . . or an availability indication," based on "at least one of a user identity based policy, an administrator policy override definition or a user policy override definition."  This is an abstract idea.

Claim 1 does "not go beyond requiring the collection, analysis, and display of available information."  *See Elec. Pwr. Grp.*, 830 F.3d at 1351.  The information being collected is who the user is, tested against the user identity policy, with a resulting display of authorization.  This is not an improvement in network architecture—it is the use of a computer as a tool to process information.  Uniloc's attempt to reframe the claimed improvement to allow client-independent user-specific application access must fail; neither that functionality nor how that can be achieved is in the claims.  Finally, as noted above, we have held that incorporating user-customization when using the computer as a tool does not render claims patent eligible.  *See id.* at 1354; *Intellectual Ventures I*, 792 F.3d at 1369–70.

Uniloc argues that the prosecution history supports its position that the claim is directed to an improvement in computer technology because Uniloc argued to the examiner that the claim was not obvious over the prior art because its claims associated the license with a *user*, whereas

the prior art associated the license with a *computer*. Uniloc's argument is inapposite. Uniloc does not explain how its argument to the examiner for non-obviousness informs the step one directed-to inquiry here. Moreover, as we noted above, a license to a user is not materially different than a license to a computer for purposes of eligibility of this claim—the claim is nevertheless directed to the license management method which merely provides information to the user about the user's authorization.

The claims also contain no inventive concept under step two. Nothing about the licensing policy, the application server, or the notification of authorization is asserted as unique or non-conventional from the way that those components ordinarily function. The licensing policy determines authorization to an application like a conventional licensing policy, the server stores and delivers the authorization information like a conventional server, and the notification notifies the user in a conventional way.

Uniloc is incorrect that the real-time availability of authorization information improves efficiency and is an inventive concept. Such real-time availability of information is a staple of a conventional network. *Intellectual Ventures I*, 792 F.3d at 1367 (noting that improvements in "speed or efficiency inherent with applying the abstract idea on a computer" do not provide an inventive step). Similarly, even if a "user identify based policy" is a new source or type of information, it is still abstract information that, as such, does not contribute to any inventive concept.

We thus affirm the district court's conclusion that representative claim 1 of the '766 patent is patent ineligible.

### AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED

COSTS

No costs.